UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-154(DSD/HB)

Thomas B. Wartman; Victoria's
Market, LLC; Glen Lake's
Market, LLC; ART, LLC
and Thomas W. Wartman,

       Plaintiffs,

v.                                                              **ORDER**

United Fund & Commercial Workers,
Local 653,

       Defendant.


     John J. Steffenhagen, Esq. and Hellmuth & Johnson PLLC, 8050 West 78th Street, Edina, MN 55439, counsel for plaintiffs.

     Timothy J. Louris, Esq. and Miller O'Brien Jensen, P.A., 120 South Sixth Street, Suite 2400, Minneapolis, MN, counsel for defendant.


     This matter is before the court upon the motion to dismiss by defendant United Food and Commercial Workers, Local 653 (Union). Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted and the case is dismissed with leave to file in state court.


**BACKGROUND**

     This labor-related dispute arises from the Union's bannering, handbilling, and picketing of grocery stores Glen Lake's Market, LLC and Victoria's Market, LLC.  The Union represents grocery employees and food handlers under collective bargaining agreements

with employers.  Compl. ¶ 6.

The Union and non-parties Fresh Seasons Market, LLC and Fresh Seasons Victoria, LLC were signatories to collective bargaining agreements.[1]  Id. ¶¶ 11-12.  In May 2014, Fresh Seasons went out of business.  Id. ¶ 14.  According to the Union, Fresh Seasons failed to pay its employees all wages, vacation pay, and holiday pay owed. Id.

One year later, two new stores - Glen Lake's Market and Victoria's Market - opened in the same locations as the Fresh Seasons stores with new management and all but three new employees. Id. ¶¶ 15-16, 18.  The new stores are owned by Mark Ploen and ART, LLC.  Id. ¶ 17.  ART, LLC is in turn owed by Ryan Wartman, Adam Wartman, and plaintiff Thomas W. Wartman.  Id.  The parties agree that the owners of the new stores had no ownership interest in Fresh Seasons and that the new stores are not legal successors to Fresh Seasons.  Both new stores are non-union.  Id. ¶ 19.

From May 2015 to November 2015, the Union engaged in a campaign to secure lost wages and benefits for Fresh Seasons employees.  Id. ¶ 21.  Specifically, the Union sought public support through picketing, handbills, banners, social media, open letters to the public, and newspaper advertisements.  See id.

---

[1]  Fresh Seasons Victoria was wholly owned by Fresh Seasons Market.  Id. ¶ 13.  Plaintiff Thomas B. Wartman owned 96% of Fresh Seasons Market.  Id.  Given the overlapping ownership, the court will refer to Fresh Seasons Victoria and Fresh Seasons Market collectively as "Fresh Seasons."

¶¶ 21, 23, 26, 27, 31-35, 37.  The Union urged people in the community to boycott the new stores.  See id. Ex. A, at 30; id. Ex. C, at 1.  Plaintiffs[2] allege that they lost business and good will as a result of the above activities, and were forced to sell certain assets of Glen Lake's Market.  Compl. ¶¶ 38-39.

On July 13, 2015, Victoria's Market and Glen Lake's Market filed unfair labor practice charges against the Union.  Louris Aff. Exs. A, B.  The National Labor Relations Board conducted an investigation and, just before it issued its decision, Victoria's Market and Glen Lake's Market withdrew the charges.  Hr'g Tr. at 14:15-19; Steffenhagen Aff. Exs. C, D.

On January 25, 2016, plaintiffs filed this action alleging that the Union (1) violated Section 8(b)(4) of the Labor Management Relations Act (LMRA); (2) tortiously interfered with their prospective economic advantage and business relations; and (3) defamed Thomas B. Wartman and Thomas W. Wartman.[3]  The Union moved to dismiss.  After full briefing and oral argument, the Union agreed to allow plaintiffs to file an amended complaint to add allegations relating to the defamation claim.  The parties agree

_____

[2]  Plaintiffs include Thomas B, Wartman; Victoria's Market, LLC; Glen Lake's Market, LLC; ART, LLC; and Thomas W. Wartman.  The court will refer to them collectively as "plaintiffs" unless a finer distinction is required.

[3]  In October 2015, the Union filed suit against Fresh Seasons seeking to compel Fresh Seasons to arbitrate the unresolved grievance regarding unpaid wages, vacation pay, and holiday pay. See United Food & Commercial Workers, Local 653 v. Fresh Seasons, LLC, No. 15-cv-3910.  The case is still pending.

that the pending motion to dismiss remains ripe for disposition notwithstanding the amendment.  ECF No. 29.

As a general rule, if a defendant files a motion to dismiss, and the plaintiff later files an amended complaint, the amended pleading renders the motion to dismiss moot.  However, in the interests of judicial efficiency and because the amended complaint does not introduce any new or unique claims not previously advanced, the court construes the motion to dismiss as redirected towards the amended complaint.

## DISCUSSION

### I.   Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a

4

formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. <u>Iqbal</u>, 556 U.S. at 678 (citation and internal quotation marks omitted).

## II.  LMRA Claim

Plaintiffs allege that the Union engaged in unlawful secondary activity in violation of the LMRA.  In relevant part, the LMRA establishes that it is an unfair labor practice for a labor organization to "threaten, coerce, or restrain any person engaged in commerce ... where ... an object thereof is ... forcing or requiring any person ... to cease doing business with any other person." 29 U.S.C. § 158(b)(4)(ii)(B).  Congress enacted § 8(b)(4) to address "concern over the involvement of third parties in labor disputes not their own." <u>N.L.R.B. v. Local 825, Int'l Union of Operating Eng'rs, AFL CIO</u>, 400 U.S. 297, 302 (1971).  "This concern was focused on the 'secondary boycott,' which was conceived of as pressure brought to bear, not 'upon the employer who alone is a party (to a dispute), but upon some third party who has no concern in it' with the objective of forcing the third party to bring pressure on the employer to agree to the union's demands." <u>Id.</u> at 302-03 (internal citations omitted).  Primary activity, by which pressure is aimed at the employer with whom there is a direct dispute, "is protected even though it may seriously affect neutral third parties." <u>Id.</u> at 303.

5

The Union concedes that its activity meets the first prong of § 8(b)(4)(ii)(B), but maintains that the second prong cannot be met as a matter of law.[4]   Specifically, the Union argues that its conduct could not have been designed to force or require plaintiffs to cease doing business with Fresh Seasons, because Fresh Seasons is no longer in business.  The court agrees.  Although the general concerns addressed by § 8(b)(4) are implicated here, the court must apply the statutory language in determining whether plaintiffs have a viable claim.  Section 8(b)(4)(ii)(B) prohibits unions from "forcing or requiring any person" (here, the new stores) to "cease doing business with any other person" (here, Fresh Markets).  In other words, the sine qua non of a § 8(b)(4)(ii)(B) claim is conduct designed to prevent business between the primary and secondary employers.  See Local 1976, United Bhd. Of Carpenters and Joiners of Am., A.F.L. v. N.L.R.B., 357 U.S. 93, 98 (1958) ("Employees must be induced; they must be induced to engage in a strike or concerted refusal; an object must be to force or require their employer or another person to cease doing business with a third person.  Thus, much that might argumentatively be found to fall within the broad and somewhat vague concept of secondary boycott is not in terms prohibited.").

---

[4]   See Hr'g Tr. at 25:15-18 ("The legal standard is was there sufficiently coercive conduct that can be picketing, and we will acknowledge here that the first prong can be met, but then you have to do to the second step.").

Here, the Union's objective was not to coerce plaintiffs to cease doing business with Fresh Seasons. Rather, the Union sought to pressure plaintiffs, who are acquainted with or related to the owners of Fresh Seasons, to encourage Fresh Seasons to resolve its dispute with the Union. Indeed, given that Fresh Seasons is no longer in business, the Union's objective could not have been to prevent business between plaintiffs and Fresh Seasons. Under these circumstances, the Union's objective was not prohibited and the LMRA claim must be dismissed.

## III. State Law Claims

Because the court has dismissed plaintiffs' federal claim, the only claim for which original jurisdiction existed, the court must consider whether to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 756 (8th Cir. 2010) (per curiam) (quoting Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 350 n.7 (1988)); see also Kapaun v. Dziedzic, 674 F.2d 737, 739 (8th Cir. 1982) ("The normal practice where federal claims are dismissed

prior to trial is to dismiss pendent claims without prejudice, thus leaving plaintiffs free to pursue their state-law claims in the state courts.").

Based on consideration of the pendent jurisdiction factors, the court will not exercise its discretion to take supplemental jurisdiction over the state-law claims.  The remaining claims depend solely on determinations of state law.  See <u>Farris v. Exotic Rubber and Plastics of Minn., Inc.</u>, 165 F. Supp. 2d 916, 919 (D. Minn. 2001) ("State courts, not federal courts, should be the final arbiters of state law.") (quoting <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1353 (11th Cir. 1997)).  Further, the parties have yet to engage in discovery and the court has not yet expended substantial resources tending to this matter.  Under the circumstances, the court is satisfied that declining to exercise supplemental jurisdiction will not harm the parties.  The court dismisses the state-law claims without prejudice.

**CONCLUSION**

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1.    The motion to dismiss [ECF No. 9] is granted;

2.    The LMRA claim is dismissed with prejudice;

3.    The state law claims are dismissed without prejudice; and

4.    The case is dismissed with leave to file in state court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 19, 2016

                                    s/David S. Doty_____
                                    David S. Doty, Judge
                                    United States District Court